FILED

OCT 10 2014

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| SOUTH DAKOTA LIBERTARIAN PARTY; EXECUTIVE COMMITTEE OF THE SOUTH DAKOTA LIBERTARIAN PARTY; and RYAN GADDY | * * * * * * | CIV 14-4132 |
| Plaintiffs, | * * | MEMORANDUM OPINION ON MOTION FOR |
| vs. | * * | PRELIMINARY INJUNCTION AND |
| JASON M. GANT, in his official capacity as Secretary of State for the State of South Dakota, | * * * * | MOTION TO DISMISS |
| Defendant. | * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This matter came before the Court on a motion for a preliminary injunction filed by Plaintiffs South Dakota Libertarian Party (SDLP), its Executive Committee and Ryan Gaddy, and a motion to dismiss the complaint filed by Defendant Jason M. Gant (Gant). Argument on both motions was heard on August 28, 2014, in Sioux Falls, South Dakota. The Court orally announced that the motion for a preliminary injunction was denied and that the motion to dismiss the complaint was granted. The Court set forth on the record a summary of the basis for its rulings, and issued a short order on the motions. For each of the reasons stated by the Court on the record, and as follows, Plaintiffs' motion was denied and Defendant's motion was granted.

### FINDINGS OF FACT

South Dakota law requires a political party to adopt a constitution or a set of bylaws, consistent with state law, which are then certified to, and filed with, the Secretary of State. SDCL § 12-5-1. The Libertarian Party of South Dakota certified its bylaws to the Secretary of State on March 23, 2012. The Secretary of State is required to notify county auditors of any party bylaw that

affects an election. SDCL § 12-5-1.3. The Libertarian Party's bylaws prohibit the nomination of any candidate who is not a registered member of the Libertarian Party at the time of nomination.[1]

The Libertarian Party of South Dakota held its state convention on Saturday, August 9, 2014. That morning, Ryan Gaddy (Gaddy) signed and dated a change of voter registration form, attempting to change his party affiliation from Republican to Libertarian. Later, during the convention, Gaddy was nominated as the SDLP's candidate for Public Utilities Commissioner. On Monday, August 11, Bob Newland, Executive Committee Member of the SDLP, mailed Gaddy's voter registration to the Minnehaha County Auditor's Office. It was received by the Auditor on August 13, 2014. The Secretary of State's Office received the SDLP's official certification of statewide candidates on August 11, 2014. Upon review, the Secretary of State found that Gaddy completed a voter registration card on August 9, 2014, but the voter registration card was not received by the Minnehaha County Auditor until August 13, 2014. A change in voter registration is not effective until received by the county auditor.[2] SDCL § 12-4-6.1. As such, Gaddy was still a registered Republican at the time of his nomination by the Libertarian Party. South Dakota law requires all candidates who seek a party's nomination to be registered affiliates of the party. SDCL § 12-6-3.2 ("No person may sign a declaration of candidacy or be nominated as a political candidate for a party unless that person is a registered voter with that party affiliation."). Because Gaddy was not a registered Libertarian at the time of his nomination, the Secretary of State rejected the Libertarian Party's nomination of Gaddy as a candidate for Public Utilities Commissioner.

---

[1] Article V § 1 of the bylaws states, "To be eligible for any Party office, a candidate must be a member in good standing of the Party and must reside in South Dakota."

[2] If the voter registration card is completed at an agency listed in SDCL § 12-4-2, is received by the auditor within five days following any voter registration deadline and is dated by the deadline, the registration card is considered effective on the date that it was signed at the agency. SDCL § 12-4-6.1. There is no dispute that Gaddy did not complete his change in voter registration card at an approved agency, thus his registration as a Libertarian was not effective until his card was received by the county auditor on August 13, 2014.

2

Plaintiffs sought a declaration that SDCL § 12-6-3.2 is unconstitutional, as well as injunctive relief directing the Secretary of State to place Gaddy's name on the general election ballot as the SDLP's nominee for Public Utilities Commissioner.

## CONCLUSIONS OF LAW

### I. Motion for Preliminary Injunction

The proper analysis of the preliminary injunction motion is found in *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731-32 (8th Cir. 2008) (en banc) (reaffirming "that a party seeking a preliminary injunction of the implementation of a state statute must demonstrate more than just a 'fair chance' that it will succeed on the merits. We characterize this more rigorous standard ... as requiring a showing that the movant 'is likely to prevail on the merits.'"). That case requires the Court to examine first the likelihood that Plaintiffs will prevail on the merits of their claim before the Court applies the remaining three factors of a preliminary injunction analysis: (1) the threat of irreparable harm or injury to the movant absent the injunction, (2) the balance between the harm to the movant and the harm that the injunction's issuance would inflict on other interested parties, and (3) the public interest. *Dataphase Sys,. Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).

#### A. Likelihood of Success on the Merits

As an initial matter, the Supreme Court has recognized that "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974). In *Storer*, the Supreme Court upheld as constitutional a California law similar to SDCL § 12-6-3.2. The law at issue in *Storer* barred any candidate from running as an independent (non-party) candidate if they had been affiliated with a political party at any time during the twelve months prior to the next primary. Two former members of the Democratic Party who were disqualified as independent (non-

3

party) candidates for Congress challenged the law as violating their First and Fourteenth Amendment rights. Strictly scrutinizing the statute,[3] the Court held that it served a compelling state interest.

> It protects the direct primary process by refusing to recognize independent candidates who do not make early plans to leave a party and take the alternative course to the ballot. It works against independent candidacies prompted by short-range political goals, pique, or personal quarrel. It is also a substantial barrier to a party fielding an 'independent' candidate to capture and bleed off votes in the general election that might well go to another party.
>
> A State need not take the course California has, but California apparently believes with the Founding Fathers that splintered parties and unrestrained factionalism may do significant damage to the fabric of government. See The Federalist, No. 10 (Madison). It appears obvious to us that the one-year disaffiliation provision furthers the State's interest in the stability of its political system. We also consider that interest as not only permissible, but compelling and as outweighing the interest the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status. Nor do we have reason for concluding that the device California chose, § 6830(d) (Supp.1974), was not an essential part of its overall mechanism to achieve its acceptable goals. As we indicated in *Rosario*, the Constitution does not require the State to choose ineffectual means to achieve its aims. To conclude otherwise might sacrifice the political stability of the system of the State, with profound consequences for the entire citizenry, merely in the interest of particular candidates and their supporters having instantaneous access to the ballot.

*Storer*, 415 U.S. at 735-736.

Plaintiffs do not attempt to distinguish *Storer*, and it would be difficult to do so. The South Dakota provision requiring candidate affiliation is far less stringent than the 12-month disaffiliation provision in *Storer*. The South Dakota statute does not single out independent (non-party) candidates

---

[3]Some language in *Storer* intimated the balancing test that the Supreme Court would later employ to decide whether state interests are sufficient to support a ballot access regulation that infringes on constitutional rights. 415 U.S. at 730 (noting that decisions concerning the validity of ballot access restrictions are "very much a 'matter of degree,' very much a matter of 'considering the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification'") (quoting *Dunn v. Blumstein*, 405 U.S. 330, 348 (1972) and *Williams v. Rhodes*, 393 U.S. 23, 30 (1968), respectively)).

4

or minor party candidates for separate treatment, nor does it set a time period for disaffiliation from another party. Under *Storer*, SDCL § 12-6-3.2 withstands constitutional scrutiny even under the strict standard of review.

Nine years after *Storer*, in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), the Supreme Court promulgated a balancing of interests test for determining the constitutionality of state ballot access restrictions.

> Constitutional challenges to specific provisions of a State's election laws ... cannot be resolved by any "litmus-paper test" that will separate valid from invalid restrictions.... Instead, a court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson*, 460 U.S. at 789. In *Anderson*, the Court considered the constitutionality of an Ohio statute that required independent parties to declare their presidential candidates well before the major political parties had determined their nominees. Anderson was an independent candidate who was precluded by the Ohio statute from appearing on the ballot because his statement of candidacy and nominating petition were not filed by the deadline. Applying the balancing test, the Court focused on the interests of the voters rather than on the candidate. *Id.* at 806 ("We began our inquiry by noting that our primary concern is not the interest of candidate Anderson, but rather, the interests of the voters who chose to associate together to express their support for Anderson's candidacy and the views he espoused."). The Court found that the state's regulation would impose a significant injury to independent voters who may not be able to vote for the candidate of their choice. *Id.* at 788, 795. The Court noted that "in the context of a Presidential election, state-imposed restrictions implicate a uniquely important national interest," and that Ohio's deadline not only "burden[ed] the

5

associational rights of independent voters and candidates," but "place[d] a significant state-imposed restriction on a nationwide electoral process." *Id.* at 794-95.

Ohio identified three main interests advanced by the early filing deadline for independent candidates: voter education, political stability, and "equal treatment for partisan and independent candidates." *Id.* at 796. The Court recognized that "the States's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions," but specified that, as a court proceeds to the balancing phase of its inquiry, it must "determine the legitimacy and strength of each of [the asserted] interests." *Id.* at 789. The Court concluded that the deadline was not necessary to further any of these interests and ruled that the early filing requirement placed an unconstitutional burden on the voting and associational rights of the supporters of independent candidates because the burden on voters outweighed the State's minimal interest in imposing the deadline. *Id.* at 792, 806.

In the present case, Plaintiffs argue that SDCL § 12-6-3.2 should be strictly scrutinized, relying heavily on *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986), where the Supreme Court struck down Connecticut's closed primary system which allowed only party members to vote in that party's primary. The Republican Party challenged the law because it was prevented from inviting unaffiliated voters to vote in the Republican primary. Finding that the regulation imposed a severe burden on the Republican Party's freedom to associate, the Court applied strict scrutiny and found that Connecticut's asserted interest in preserving the integrity of the electoral process was not compelling enough to justify prohibiting the Republican Party from allowing unaffiliated voters to vote in its primary. The Court pointed out that its ruling was limited to the factual situation before it - - a political party's desire to invite independent (unaffiliated) voters to participate in its primary:

> Our holding today does not establish that state regulation of primary voting qualifications may never withstand challenge by a political party or its membership. A party seeking, for example, to open its primary to all voters, including members of other parties, would raise a different combination of considerations. Under such circumstances, the effect of one party's broadening of participation would threaten other parties with the disorganization effects which the statutes in *Storer v. Brown*,

6

415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), and *Rosario v. Rockefeller*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973), were designed to prevent.

*Id.* at 224 n. 13. The Court remarked that if the State of Connecticut were to provide "that only Party members might be selected as the Party's chosen nominees for public office, such a prohibition of potential association with nonmembers would clearly infringe upon the rights of the Party's members under the First Amendment to organize with like-minded citizens in support of common political goals." *Id.* at 215–216. According to Plaintiffs, this language establishes that a state cannot control who a party nominates, and that § 12-6-3.2 is unconstitutional because it "explicitly forbids a person from being nominated by party if that person is not an official member of that partisan affiliation." (Doc. 10, p. 10.) In addition to being dicta, the language quoted from *Tashjian* does not deem unconstitutional every minimal infringement on a party's ability to select a candidate, particularly if there are sufficiently important state interests justifying the infringement.

Indeed, even the *Tashjian* Court distinguished the challenge brought by the Republican Party from challenges brought by the potential candidates in *Storer*, and by the voters in another political association case, where the challenged statutes were upheld:

> The statute in *Storer* was designed to protect the parties and the party system against the disorganizing effect of independent candidacies launched by unsuccessful putative party nominees. This protection, like that accorded to parties threatened by raiding in *Rosario v. Rockefeller*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973) [involving a challenge by voters to a New York statute requiring a voter to enroll in the party of his or her choice at least 30 days before the general election in order to vote in the next party primary] is undertaken to prevent the disruption of political parties from without, and not, as in this case, to prevent parties from taking internal steps affecting their own process for the selection of candidates. The forms of regulation upheld in *Storer* and *Rosario* imposed certain burdens upon the protected First and Fourteenth Amendment interests of some individuals, both voters and potential candidates, in order to protect the interests of others. In the present case, the state statute is defended on the ground that it protects the integrity of the Party against the Party itself.

*Tashjian*, 479 U.S. at 224. Plaintiffs admit that the issue in *Tashjian* differs from the issue presented here. As discussed above, the *Storer* Court found that the state's interest in the integrity of its

political process justified a one year party disaffiliation requirement before a candidate could gain ballot access as an independent (non-party) candidate. This case presents a similar situation and, under *Storer*, SDCL § 12-6-3.2 is constitutional.

After *Tashjian*, the Supreme Court continued to reiterate that not every election regulation that burdens associational rights is subject to strict scrutiny. For example, in *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363-64 (1997), the Supreme Court determined that even though Minnesota's ban on "fusion" candidates (running as a candidate of two or more parties) imposed a burden on a party's access to the ballot and its associational rights, the burden was not severe enough to warrant strict scrutiny. According to the Court, prohibiting political parties from naming another party's candidate as their own was a minimal burden on their associational rights since they were still free to endorse the other party's candidate. Of particular note is how the Court addressed the New Party's claim that it has a right to select its own candidate.

> The New Party's claim that it has a right to select its own candidate is uncontroversial, so far as it goes. *See, e.g., Cousins v. Wigoda*, 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975) (party, not State, has right to decide who will be State's delegates at party convention). That is, the New Party, and not someone else, has the right to select the New Party's "standard bearer." It does not follow, though, that a party is absolutely entitled to have its nominee appear on the ballot as that party's candidate. A particular candidate might be ineligible for office, unwilling to serve, or, as here, another party's candidate. That a particular individual may not appear on the ballot as a particular party's candidate does not severely burden that party's associational rights. *See Burdick*, 504 U.S., at 440, n. 10, 112 S.Ct., at 2067 n. 10 ("It seems to us that limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable"); *Anderson*, 460 U.S., at 792, n. 12, 103 S.Ct., at 1571–1572, n. 12 ("Although a disaffiliation provision may preclude ... voters from supporting a particular ineligible candidate, they remain free to support and promote other candidates who satisfy the State's disaffiliation requirements"); *id.*, at 793, n. 15, 103 S.Ct., at 1572, n. 15.

*Timmons*, 520 U.S. at 359. In the present case, the Libertarian Party may nominate anyone who is eligible for office. The State of South Dakota has determined that, to be eligible for office, a nominee must become a member of the party at any time prior to being nominated. *Timmons* teaches that such

8

a requirement is only a slight burden on the party's associational rights and does not justify strict scrutiny of the law.

Similarly, in *Clingman v. Beaver*, 544 U.S. 581 (2005), the Supreme Court refused to apply strict scrutiny to an Oklahoma statute allowing political parties to open their primary elections to only their own party members and voters registered as independents. The Libertarian Party challenged the statute because it was prevented from inviting members of other parties to vote in its primaries. According to the *Clingman* Court, electoral regulations imposing severe burdens on fundamental rights are subject to strict scrutiny; those imposing lesser burdens are constitutional if they are reasonable, non-discriminatory, and justified by legitimate state interests. *Id.* at 586-87. The Court distinguished between "minimal infringement" and "severe" burdens, holding that requiring voters to register with a party before voting in a primary was a minimal barrier to voting because voters could easily switch their party registration to either independent or to the Libertarian Party. *Id.* at 591-92. The Court compared the Oklahoma regulation conditioning the party's ability to invite a voter into its primary based on the voter's willingness to dissociate from another party with the Minnesota regulation in *Timmons*, "in which Minnesota conditioned the party's ability to nominate the candidate of its choice on the candidate's willingness to disaffiliate from another political party." *Id.* at 590. The ease of voter registration was described by the Court.

> Disaffiliation is not difficult: In general, "anyone can 'join' a political party merely by asking for the appropriate ballot at the appropriate time or (at most) by registering within a state-defined reasonable period of time before an election." *Jones, supra,* at 596, 120 S.Ct. 2402 (STEVENS, J., dissenting). In Oklahoma, registered members of the Republican, Democratic, and Reform Parties who wish to vote in the LPO primary simply need to file a form with the county election board secretary to change their registration. *See* Okla. Stat. Ann., Tit. 26, § 4–119 (West Supp.2005). Voters are not "locked in" to an unwanted party affiliation, *see Kusper v. Pontikes*, 414 U.S. 51, 60–61, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973), because with only nominal effort they are free to vote in the LPO primary. For this reason, too, the registration requirement does not unduly hinder the LPO from associating with members of other parties. To attract members of other parties, the LPO need only persuade voters to make the minimal effort necessary to switch parties.

*Clingman*, 544 U.S. at 590-591.

9

The *Clingman* Court questioned why it had applied strict scrutiny in *Tashjian*, but noted that the Oklahoma statute at issue in *Clingman* was less burdensome than the one in *Tashjian*. *Id.* at 592. Reiterating that "not every electoral law that burdens associational rights is subject to strict scrutiny," the Court upheld Oklahoma's minimally burdensome, semiclosed primary system because the state presented "important regulatory interests," such as preserving political parties as viable interest groups and deterring party raiding and "sore loser" candidacies. *Id.* at 593-94.

Under *Anderson* and its progeny, this Court first must determine whether SDCL § 12-6-3.2 severely burdens the constitutional rights of voters, the SDLP and Gaddy. A severe burden would trigger strict scrutiny, requiring the regulation to advance a state interest of compelling importance. If the law imposes a "reasonable, nondiscriminatory" limitation rather than a severe burden on First Amendment rights, the Court applies a more deferential standard of review and the limitation would be justified by the State's "important regulatory interest." Accordingly, the Court will consider what burden is placed on the constitutional rights of voters and the plaintiffs, and then will balance that burden against the precise interests identified by the State and the extent to which these interests require that the constitutional rights be burdened.

### 1. Magnitude of Burden on First Amendment Rights

Plaintiffs argue that SDCL § 12-6-3.2 prohibits a political party from nominating a non-member as a party candidate for public office, thereby burdening their associational rights. According to Plaintiffs, *Tashjian* requires strict scrutiny of the statute and a finding that it is unconstitutional.[4] While it is true that the South Dakota law burdened Plaintiffs by denying the Libertarian Party the right to nominate Gaddy for the upcoming election, the Supreme Court's reasoning in *Timmons* and *Clingman* supports a finding that SDCL § 12-6-3.2 only minimally burdens Plaintiffs' associational rights. Gaddy easily could have met the affiliation requirement by simply filling out a voter registration card at an approved agency, or by getting the form to the county auditor, any time prior

---

[4]Plaintiffs' argument that the law is unconstitutional is made more difficult because the Libertarian Party's bylaws also require Libertarian candidates to be registered Libertarians at the time of their nomination.

to his nomination. Because a potential candidate is free to join the Libertarian Party with nominal effort, SDCL § 12-6-3.2 does not impede the ability of the Libertarian Party or its potential candidates to participate meaningfully in the political process. The burden on the Libertarian Party is further lessened by the fact that the requirement in this case applies equally and fairly to all political groups. Because the burden of party affiliation is minimal, strict scrutiny does not apply. *See Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992) (stating that when laws impose minimal, or less than severe, burdens on individuals' First Amendment rights, courts err in applying strict scrutiny). When a state ballot access provision does not severely burden associational rights, the interests of the State "need only be sufficiently weighty to justify the limitation imposed on the party's rights." *Timmons v. Twin Cities*, 520 U.S. at 364. Thus, Defendant need only show that affiliation with the nominating party advances an important state interest.

### 2. Precise Interests Identified by the State and Extent to Which the State Interests Justify the Burden on Constitutional Rights

The State asserts that it has an interest in requiring an individual to affiliate with a party prior to becoming a candidate for that party. According to the State: "As in *Clingman*, the State has an interest in preserving political parties as viable and identifiable groups, enhancing party building efforts, and guarding against party raiding and 'sore loser' candidacies by spurned primary contenders." (Doc. 12, p. 8.) These legitimate and important regulatory state interests justify the reasonable and nondiscriminatory requirement of party membership set forth in SDCL § 12-6-3.2. Because the State has shown important interests are advanced by requiring party nominees to be members of the nominating party, SDCL § 12-6-3.2 is constitutional.

### B. Irreparable Harm, Balance of Harms, Public Interest

For the same reasons set forth above, any infringement on Plaintiffs' constitutional rights caused by SDCL § 12-6-3.2, even if irreparable, balances in favor of denying the injunction in this case. Requiring the State to place Gaddy's name on the ballot would thwart the State's legitimate interests in preserving political parties as viable and identifiable groups, enhancing party building

efforts, and guarding against party raiding and "sore loser" candidacies by spurned primary contenders. As discussed above, under the circumstances present here, the harm Plaintiffs will suffer by not placing Gaddy's name on the ballot is outweighed by the State's interests.

The final *Dataphase* factor is the public interest. South Dakota law, SDCL § 12-6-3.2, only minimally impinges on the associational rights of Plaintiffs who wish to nominate candidates who are not members of the Libertarian Party. The potential candidate need only register as a Libertarian at any time prior to his or her nomination. The State's interests are served by this regulation. The public interest factor favors denying Plaintiffs' request for relief in this case.

## II. Motion to Dismiss Pursuant to Rule 12(b)(6)

The relief requested in Plaintiffs' complaint is limited to declaratory and injunctive relief. Denial of that requested relief left no issue before the Court and, therefore, Defendant's motion to dismiss was granted.

For these reasons, Plaintiffs' motion for a preliminary injunction was denied and Defendant's motion to dismiss was granted.

Dated this 10th day of October, 2014.

BY THE COURT:

*/s/ Lawrence L. Piersol*
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: *Matthew Thelen*
     DEPUTY

12